Wireless Media Innovations v. Maher Terminals, LLC Maher Terminals, LLC This is appeal number 15-1634 Mr. Swenson Yes, Your Honor You've reserved five minutes for rebuttal, right? That's correct, thank you. Whenever you're ready. May it please the Court, the District Court's invalidation of WMI's patent claims represents the point in the evolution of Section 101 jurisprudence where Graham v. Deere has been thrown out the window and Alice Step 2 has basically subsumed 103 to the detriment of our patent system. Section 103 in the 1952 patent code struck an important balance in the law and the four-part Graham v. Deere test created a framework to apply it that has worked for 60 years as of this month. That includes the clear and convincing burden of proof and recognizing the importance of key underlying factual inquiries into the prior art and differences from the patent claims and done so at the time of the invention. All while forbidding the use of hindsight in this analysis. In contrast, the decision before this Court under the rubric of Section 101 on appeal today is for all practical purposes a decision on obviousness but solely based on the pleadings with no submission and consideration of any factual evidence at all using only the disclosures of the specification as the evidence against the claims and refusing to apply the clear and convincing evidence burden of proof. Did the District Court incorrectly characterize the abstract idea underlying these claims? Absolutely. What is your proposed redefinition? I take issue with the phrasing of the question. I don't redefine the abstract idea because I don't think that it does claim an abstract idea. I would point to specifically starting with the 789 patents and claim 1. There, it is a system claim to a container monitoring system. This is JA 91, of course, column 9. It consists of four absolutely concrete elements in combination. It is a system that includes a receiving area, a container entry point, a switching vehicle, and means for recording information. So there's nothing abstract about that. This couldn't be more concrete of a combination of physical elements that work together. Alice's claim had components, or at least some of the claims had very specific components, right? Alice takes us into an area where you're talking about financial transactions, but they're implemented on a computer. They also talk about, in the case law, what we call Beauregard claims, where something is put into a medium. To execute an algorithm, for example, in the financial area on a computer, it has to be put into computer code and it has to be run on a computer, which is why the law takes us into the idea of a general-purpose computer. We add that to what is otherwise a method or a process, because unless you're actually physically sitting with a paper and pencil to do a financial transaction, you have to do it on a computer. So the law takes that into account, and we have this whole added aspect of a general-purpose computer. But that is nothing like this claim. This is a container system that includes, like I said, a receiving area, a container entry point, a switching vehicle, which is a giant vehicle that moves containers that are carried on ships and rail cars and trucks. You have other claims that are directed more to the monitoring of various actions and then recording it and then generating reports, right? Absolutely. Judge Shin, your question raises a very important point, which is that, as we point out, particularly in our reply brief, they have tried to characterize all of our claims with one table on page 10 and 11 of their brief without discussing any of these different claims. They've summarized them in their own self-serving, attorney-generated language in a table of six rows. Well, no, but I understand you're taking us to this claim because this is the claim that has something that – or this is your best claim for identifying physical components. Well, so I think it is probably the best claim. There's other claims that are really more devoted to monitoring actions taking place. Claim nine, for example, of the 789. The method claim, which is – I agree, Judge Bryson. And so this one, this particular claim, I guess goes beyond that in the sense that it's actually calling for the actions to take place and then monitoring those actions and recording data. I'm not sure you're saying claim one calls for those actions to take place or claim – I lost you there. I'm sorry, claim nine is more – A method claim. I guess what I would call the observational method, where you're observing something, you're recording data, and maybe you're generating reports in this one. I'm not sure. But then this claim, claim one, is different in the sense that now it's actually describing the playing field, the playing arena where the events take place. The physical – Right. The whole physical system. And then the final step is – or the limitation is means for recording information about what all the activities are in – that are going to happen in the arena. So I guess what I was wondering is, I mean, if I go to a baseball game and I'm in the audience and I have a little chart with me and I'm monitoring the actions on the baseball field and I'm recording every strike and ball and hit and out, is that an abstract idea? Well, so the – I'm monitoring the baseball game. The monitoring action may be – so I understand where you're going. And I do see the distinction, which comes back to, I think, the way you started your question, is that there are different aspects to these claims. And as Judge Bryson pointed out, claim nine is a method claim. Okay. So we agree that that's an abstract idea, what I basically described. I think monitoring – simply monitoring something is an abstract idea. Okay. So what if I'm instead watching the ball game on TV at home and now I'm sitting in my comfy chair and I've got my chart again and I've got my pen and I'm recording every strike and ball and hit and out and run scored? Is that an abstract idea too? Well, I think, Your Honor, the question goes to what you're claiming. If I claim a scorebook and a pencil and a television set for remote monitoring of a baseball game that's taking place in a stadium, and maybe I can claim the stadium, I'm extrapolating, that's a physical system that involves the ability – not the action, the ability to monitor a baseball game. If I have a method claim that says monitoring a baseball game by watching the game and recording the score, there's a point where it crosses over into an abstract idea. But that's the whole point about our claim one of the 789 patent. And, by the way, also claim one of the 291 patent, which is all physical means plus function elements. And, you know, continuing our point that we've made in our briefs, that these claims are distinct, in the 789 patent, claim three adds a communication link. Not an act of communicating or monitoring, but a communication link. And then you go to claim eight in the 789 patent, and it makes that a mobile telecommunications link, which, again, is a physical thing. And this is 1995. You know, we're not talking about sitting here in 2015 when the New Jersey court made its decision. We're supposed to be in 1995 saying, hey, you know, we've got these giant switching vehicles in a gate, in a yard, and we're adding a mobile telecommunications link to the switching vehicle. Fine, but if under Alice we conclude that there is some kind of abstract idea here, and we can quibble about what's the right precise articulation formulation. But then, according to Alice, we now have to go on the hunt for the inventive concept. And I didn't quite see you make the case in your briefing that, yes, the communications link in dependent claim XYZ is an inventive concept for implementing the abstract idea, which you would dispute there's an abstract idea. But given that you have to agree there is one for purposes of argument, the dependent claim XYZ's communication link recitation is an inventive concept. I didn't quite see that kind of an argument. Well, we did, Your Honor, because what we argued in our brief is that what's patentable here, and this is why I refer to Section 103 and how this subsumes the obviousness analysis, again, on a 12B6 motion with no evidence and no scope and content of the prior art, the question isn't the communication link in Claim 3 or mobile communication link in Claim 8. The question is the combination. That's what we patented. We patented everything in Claim 1 plus what's in Claim 3. And the point is what's innovative and what's non-obvious is that combination. And we get to the district court. The district court gets bogged down in thinking that they're applying Step 2 of ALICE, starts talking about there's nothing novel here. The court says that twice. I think it's JA19 and point. Step 2 of ALICE and novelty innovation for obviousness purposes are pretty close cousins, at least, it seems to me. I mean, I understand the frustration, the patent bar with the Step 2 of ALICE for that reason, but it's what the Supreme Court said. Well, Your Honor, I certainly understand that. But I would stress, and we put this in our reply brief, the whole point of Section 103 was that we had gotten bogged down in this problem once before with the flash of genius test back in the 40s, which Judge Rich was involved in writing the patent code with Section 103, which attempted to resolve that. That led to Graham v. Deere and a framework for analyzing that in four steps. And now we've elevated 101. And as you say, I absolutely agree. Right now, I have a hard time finding the difference between 101, you know, ALICE Step 2. But we have to try. So what is it here that satisfies the inventive concept? What component of your invention? It is going back to 1995, not using hindsight in the present and saying something is conventional today. It's going back and looking at the combination of these elements of a receiving area, a container entry point, and those things mean, you know, for example, the physical area with the gates and entry points, RFID tags. And then, you know, if we extend to Claim 3 and Claim 8, a communication link, and then a mobile communication link, it is the combination. I don't know how else to say it. What's innovative is combining those things. And the point of this patent being issued is that they demonstrated at least to the patent office that that hadn't been done and was not obvious. And again, with the acknowledgement that this is going to sound a lot like an obvious misinquiry, but if I have a yard in which containers are coming in and out, and I have a guy who sits at the fence with a notepad and he notes the numbers of the containers as they come in and notes where they're going and so forth, that would sound like it falls within the scope of Claim 9. So, first of all, let me point out, even if I were to agree with you on that, you're right. I first would like to know whether you do agree with me on that. Well, I think that it's not quite the same thing because what the whole spec here talks about is real-time monitoring and being able to track things remotely in real time. And you cannot do that. I mean, you don't even have carrier pigeons fast enough that I can write it down. So he's got a computer next to him and he enters the number that he just wrote down on his pad. So that is a computer. It's part of a combination. It's not just a general-purpose computer. It's not putting an algorithm like Alice or Bilski or something else on a general-purpose computer. It's a computer that's part of a combination that serves an overall purpose. So it's more than that. So to go one step back from that, I then will just, for the record, say that Claim 9, even if you're correct on that, Claim 9 is a method claim that is totally distinct from Claim 1 of each patent that is purely physical combinations of things. Okay, you're deep in your rebuttal.  We'll give you four minutes of rebuttal. So let's hear from the other side. Mr. Donahue? Good morning, Your Honor. Okay. Please, as a court, I would like to start with the comment Judge Bryson made regarding Claim 9 and the guy at the gate. In fact, if we look at the 789 patent, Column 5, it describes the types of data input devices, conventional data input devices that can be used. And at about line 18, it says that one form of data identification and input is by a human operator at a terminal. So, in fact, a person at the gate recording the numbers of the container would read on the claims. It's exactly highlights that what the 789 and the 291 patents describe really are an abstract idea, the abstract idea of monitoring, recording, and reporting on the locations of these containers in the yard. And all that the claims do at most is layer on top of that a general purpose computer and conventional data gathering devices. For example, a person typing into a terminal. Another example in that Column 5 is a person in a switching vehicle with a Motorola model HT-1000 handheld radio, which is like a little walkie-talkie relating information. If the 789 patent Claim 1 were the only claim in front of the court, how would you describe the abstract idea in that claim? Your Honor, I would just claim one of the 789. I understand. So, if you look at just Claim 1 of the 789, the abstract idea would be accumulating, you could take it right from the preamble, accumulating and storing information on shipping containers. So, it would be, again, just the first parts of monitoring and recording the location of shipping containers within the yard. Where is the accumulating and storing information claim? That's in the means for recording? The means for recording, presumably. And what's the patent teach in the means, in the spec? What's the patent tell us about what those means for recording are? So, what the patent describes for recording would be, as I pointed to earlier at column 5 on JA89, beginning at about line 18, you've got a human operator at a terminal where you would input information. You've got a human operator with a handheld radio where you would convey information and then input the data into the container monitoring control system. And then you could have some conventional optical or RF scanners. And so, those would be the ways that you would record the information. Accumulating and storing information. You think the abstract idea is accumulating and storing information? Yes, Your Honor. And that's all done into, further down on column 5, beginning about line 45, a conventional management information system or a database. So then, are you saying that claim 1, the way it's structured in terms of having all of these components and all of these actions taking place, they're all kind of like the warm-up act to the real moment of the claim, which is the recording of the information of all those actions that take place? That's correct. I would say... It sounds almost like what happened in the Mayo versus Prometheus claim, in the sense that you're administering some kind of drug to a patient and then the drug metabolizes in the person's bloodstream and then you measure the metabolite in the bloodstream so that you can appreciate whether that metabolite level is too high or too low. And then the fact is that final step was deemed to be a law of nature. And all those other steps leading up to it were ultimately deemed to be insignificant. So is that kind of similar? I'm just thinking out loud here to this claim. Another way of looking at it, how is the structure in the comprising limitations in claim 1 any different, say, for example, than what goes into hedging? If you say method for hedging, Belsky, and you have to have, you're hedging something. You're hedging one thing against another. You're hedging, for example, you say method for hedging and you take one thing at one point in time that is discernible and you're making a bet and hedging on the other side of it. So you've set up these two things that you're hedging about. Why aren't they like the receiving area or the entry point or the switching vehicle? I think that's right, Your Honor. Judge Chen, I also think your baseball analogy earlier is a good one. My wife keeps score at every baseball game we go to, so I'm particularly fond of that one. It would be like claiming the baseball field and the players on the field, the manager and the dugout, all of which you need in order to score and understand the baseball game when you're really claiming a method or a system for scoring the baseball game. So if the abstract idea is recording the actions in the baseball game, all those other elements and steps are necessary in order for the abstract idea to be done, I guess is what you're saying. They're what the abstract idea is applied to, essentially. Right. Okay. So what happened if you claimed an unconventional step in the method for scoring the game, including determining what the star structure would be in the sky that night, something that's novel and unusual and unexpected? It's possible that that would work. That's not what we have in the WMI case. What Mr. Swenson is saying is having this enormous switching vehicle in 1995 was unusual and novel and different. Well, I'm not sure that the switching vehicle itself is novel. Containers have always been moved within yards. They have to be moved. A container can't be moved. What you're saying is nobody would have thought of replacing Judge Bryson's individual with the green eyeshade who sits at the entry level up in a big tower would have replaced that with a huge machine of some sort that was automated. Well, the switching vehicle is moving the container. What is reporting and recording on the location of the container is something else. It's either a human being that's watching, a human being in the switching vehicle with a radio, or a conventional RF or optical scanner. So it's not the switching vehicle that's recording. Or maybe in the prior EARTH, the thing that was switching, there was an individual who got in the truck and moved it. Now they have some device that does it. I'm sorry, you're saying that would be the unconventional? That could be. That's not described in the WMI patents. Neither the 291 nor the 789. In fact, the 291 patent identifies that tracking containers is well known. It's contending that the invention is tracking them within the container yard. There's also no specialized unconventional hardware here. Again, the switching vehicles are part of the container yard, just like the baseball bat is part of the baseball field. And there's no specialized software described. There's really no software at all described, aside from mentioning conventional management information systems or databases. Because of that, from our perspective, the patent fails both prongs of the ALICE test. We had the abstract idea of monitoring, recording, and reporting on the container location, and that can't be overcome with conventional data gathering devices. This is much like content extraction with the scanner, which was considered a conventional data gathering device. So is every data gathering system that uses conventional data gathering devices ineligible under Section 101? Not necessarily. Not if it's tied to something that's not an abstract idea. The issue is just that the conventional data gathering element, like a handheld radio or a conventional optical scanner, layered on top of an abstract idea isn't enough for the inventive concept under Step 2. What you're saying, I guess, is that if your invention is a system of gathering information and recording it, then it doesn't matter for purposes of patentability whether that occurs in a baseball field or a rail yard or a container yard or any other specific application of that general practice. The specific application under ALICE falls away because just because you have a specific context within which the abstract idea is being applied doesn't make it any the less abstract. Yes, Your Honor. It's not the usual sense of the word abstract, which is that it's other than specific. Yes, Your Honor. But specificity is not a defense to an ALICE-type argument. And there isn't specificity in the 789 or the 291 patents in terms of some unconventional combination or some particularized software or hardware. Well, there's some specificity. RFID is referenced as a means of doing the recording and reporting. So there's some specificity, but your argument is that's conventional. Yes, thank you for that distinction. The specificity is laying out exactly what the conventional components are, including by manufacturer name and model number. There's no specificity as to something new that would provide the inventive concept beyond the conventional devices. If Your Honors don't have other questions, I have covered our points. Thank you. With all respect, Your Honor, I think the baseball analogy, we've gotten a little far afield. I didn't mean that as a pun, but it turned out that way. There historically was, for example, a patent on arena football. And that was patentable. I learned this at an event at the Iowa Intellectual Property Association. The inventor received an award, and so he talked about it. And he patented a new thing where you had a different field size in the boards and different end zones and different widths of goal posts. And that's kind of comparable to this in terms of you have this large area and you have these aspects to it and you have these physical components. Now, the fact that you would have a method for scoring the game or rules to the game might also be part of that invention. But the way the patent system works, those can be separately patented under different types of claims, system claims, method claims. And they're non-contiguous in the sense that just because we can point to Claim 9 as you have, Judge Bryson, doesn't mean that that works backwards to invalidate Claim 1, which covers this area and the physical aspects of this. And so I feel we're getting away from what Claim 1 is by talking about Claim 9 and working backwards. These are different claims for different purposes. And I also want to point out, and absent the question, this will be my last point, that there's a lot of talk in the brief about cases like Digitech and content extraction. The fact that there was a scanner and a computer together, these two pieces in Digitech, it was actually a patent for a method of digitizing information. And the fact that you used a conventional computer and scanner, which the patentee admitted before this court on the record in oral argument was conventional together, not just a generic computer, but that it had a scanning ability, that's why that was invalid under 101. This is a different case. As we've said in the briefs, we certainly don't admit that this is all conventional equipment. But more importantly, to conclude on the obviousness point, this is a combination. The key is that this is a combination. And as we've said in the cases in our brief, you can even have, obviously, old elements in a combination as long as the combination is new and non-obvious. And we never got to that point in litigation because this was a Rule 12b-6 motion on the pleadings where nothing was considered but the patent itself. So that is what is inherently unfair about this, and we believe it should be reversed. Okay. Thank you, Mr. Smith.